CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MARISSA HARRIS (NYBN 4763025)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    marissa.harris@usdoj.gov

Attorneys for United States of America

**FILED**

Oct 28 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. **CR 25-71280-MAG** |
|     Plaintiff, | NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |
|     v. | |
| JOHN ABIDOG,<br>VIET PHAM,<br>JOHN NGUYEN, | |
|     Defendants. | |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on October 27, 2025, the above-named defendants were arrested pursuant to arrest warrants (copies attached) issued upon a

☐    Indictment

☐    Information

☒    Criminal Complaint

☐    Other (describe) _____

pending in the District of Massachusetts, Case Number 25-MJ-3264-JDH.

1    In that case (copy of criminal complaint attached), the defendants are charged with a violation(s)

2  of Title(s) <u>21</u> United States Code, Section(s) <u>846</u>.

3  Description of Charges: <u>Conspiracy to Distribute and Possess with Intent to Distribute Controlled

4  Substances</u>.

5    The maximum penalties are as follows:

6    • Maximum Prison Term: 20 years

7    • Maximum Fine: $1 million

8    • Minimum Supervised Release: 3 years

9    • Maximum Supervised Release: Life

10    • Special Assessment Fee: $100

11    • Forfeiture

12    • Mandatory and Discretionary Denial of Benefits

13    • Potential Deportation

14                                            Respectfully Submitted,

15                                            CRAIG H. MISSAKIAN
16                                            UNITED STATES ATTORNEY

17  Date: October 28, 2025                    _____/s/_____
                                             MARISSA HARRIS
18                                            Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| John Abidog (YOB 2005) ;<br>Viet Pham (YOB 2005); and<br>John Nguyen (YOB 2004) | ) | 25-mj-3264-JDH |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   July 1, 2025 to October 27, 2025   in the county of   Suffolk   in the

District of   Massachusetts   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:

See attached Affidavit of United States Postal Inspection Service, Postal Inspector, Leroy Versoza.

☑ Continued on the attached sheet.

*Leroy Versoza / by JDH*
_____
*Complainant's signature*

Leroy Versoza, Postal Inspector, USPIS
_____
*Printed name and title*

Subscribed and sworn to via telephone in accordance with
Federal Rule of Criminal Procedure 4.1.

Date:   October 27, 2025

*Jessica Hedges*
_____
*Judge's signature*

City and state:   Boston, Massachusetts

Hon. Jessica D. Hedges, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Leroy Versoza, hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Postal Inspector with the United States Postal Inspection Service ("USPIS") since 2013.  I am presently assigned to the San Francisco Division, Richmond, California.  My responsibilities include the investigation of unlawful use of the U.S. Mail for criminal activity, including the transportation of contraband materials through the U.S. Mail.  As part of my training and experience, I received 12 weeks of Basic Inspector Training in investigative techniques at the Career Development Division located in Potomac, Maryland, and one week of Prohibited Mail Narcotics Training instructed by the USPIS.  I have conducted numerous investigations into dark web-related shipments and various forms of narcotics trafficking.  Furthermore, in the course of assisting in past investigations, I have spoken with other Postal Inspectors who have substantial experience related to investigating schemes that utilize the U.S. Mail and the evidence that can be obtained as a result.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2.      During my career, I have participated in investigations involving the illegal manufacturing, smuggling, and distribution of contraband, including controlled substances.  I have participated in aspects of controlled substance investigations relevant to the sale and distribution of controlled substances and other contraband.  I have participated in interviews of defendants and informants with personal knowledge of the contraband trafficking business.

3.      Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, state, national, and international levels,

including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. I am familiar with the manner in which drug traffickers use telephones, coded or slang-filled telephone conversations, text messages, and other means to facilitate their illegal activities.

## PURPOSE OF AFFIDAVIT

4.     I submit this affidavit in support of an application for a criminal complaint charging John Abidog ("ABIDOG"), John Nguyen ("NGUYEN"), and Viet Pham ("PHAM") (collectively, the "Target Subjects") with conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846 (the "Charged Offense"). Based on the facts set forth in this affidavit, there is probable cause to believe that the Target Subjects have committed the Charged Offense.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and arrest warrants and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

### A.     Background of Controlled Purchases in Massachusetts

6.     Investigators have made multiple controlled buys in Massachusetts from Christopher Barr ("BARR"). Investigators previously submitted affidavits in support of a warrant for a GPS tracking device for BARR's vehicle on February 6, 2025 and April 9, 2025. *See* Docket Nos. 25-mj-3039-JDH & 25-mj-3051-JDH. The affidavits in support of those warrants are attached hereto as Exhibits 1 and 2, and incorporated by reference as if fully stated herein.

7.     As described in further detail in Exhibits 1 and 2, a confidential source informed investigators that BARR was distributing counterfeit Adderall pills containing methamphetamine and that BARR was receiving his supply of these counterfeit Adderall pills containing methamphetamine from the dark web.

8.     Investigators identified multiple suspicious packages paid for with cryptocurrency, coming from addresses in San Jose to BARR in Massachusetts.  On or around the dates these suspicious packages were delivered to BARR, BARR would correspond with the confidential source and later with an undercover agent confirming he had the drugs to sell and then arrange the transactions, also to take place in Massachusetts.  *See* Exhibit 1 at ¶¶ 12-18 (detailing BARR's January 13, 2025 receipt of package from San Jose address and subsequent communications with confidential source to confirm he had supply of drugs and coordinating sale of drugs on January 14, 2025); Exhibit 2 at ¶¶ 14-21 (detailing February 12, 2025 controlled purchase of pills containing methamphetamine by confidential source from BARR); Exhibit 2 at ¶¶ 22-38) (detailing March 26, 2025 controlled purchase of pills containing methamphetamine by undercover agent from BARR).

9.     The pills from the January 14, 2025 controlled purchase were sent to the Customs and Border Protection Laboratory ("CBP Laboratory") for testing and were found to be 119.98 grams of a substance containing methamphetamine.

10.     The pills from the February 12, 2025 controlled purchase were sent to the CBP Laboratory for testing and were found to be 198.32 grams of a substance containing methamphetamine.

11.     The pills from the March 26, 2025 undercover purchase were sent to the CBP Laboratory for testing and were found to be 345.88 grams of a substance containing methamphetamine.

12.     The suspicious packages, which investigators believe contained the methamphetamine that BARR sold to the confidential source and undercover officer, as described above, listed the senders as various trading card companies in the San Jose area.

13.     An undercover agent ("UC") communicated with BARR on April 14, 2025, to arrange a purchase of 1,000 "addies" in exchange for $2,750 in bitcoin.  Based on my training and experience, I understand the term "addies" to mean Adderall or counterfeit Adderall, which commonly contains methamphetamine.  U.S. Postal business records reflect that a package addressed to BARR from "88 Cardhouse, 5970 Mowery Ave, STE J, Newark CA 94560" for which postage was paid through a website that only accepts cryptocurrency was delivered to BARR's residence on April 19, 2025.  Consistent with the prior suspicious packages delivered to BARR, the sender, 88 Cardhouse, was a trading card company in the San Jose area.

14.     On April 23, 2025, BARR and the UC agreed to meet at the same Home Depot in Waltham, Massachusetts as prior drug purchases.  Investigators set up surveillance at the Home Depot where BARR instructed the UC to meet.  Investigators observed BARR arrive at the location and enter the men's bathroom around 6:37 p.m. and exit around 6:40 p.m.  BARR sent a message detailing the location where he left the drugs at approximately 6:43 p.m.  Investigators saw BARR return to his vehicle around 6:45 p.m. and then depart the parking lot around 6:49 p.m.   The UC entered the Home Depot around 6:50 p.m., went into the men's bathroom, and observed two plastic bags containing pills on the ground, the location BARR had communicated to the UC.  Investigators weighed the bags and, with packaging included, it weighed 391.2 grams.

Investigators sent the bags to the CBP Laboratory to be tested, and the contents were positive for methamphetamine and weighed over 360 grams.

**B.      Investigation into Source of Suspicious Packages in San Jose**

15.      Investigators then started investigating potential sources of the drugs being sold through dark web vendors and being sent from purported trading card companies in the San Jose area.

16.      On July 1, 2025, investigators went to a United States Post Office in Newark, California to respond to a complaint received from a local business called 88 Cardhouse.  Notably, this was the listed sender of the package sent to BARR that investigators believe contained the methamphetamine sold to the UC in the April 23, 2025 controlled purchase.

17.      88 Cardhouse complained that multiple packages were "returned to sender" at its business.  88 Cardhouse reported that it did not ship these items.  Investigators took three of these packages for further investigation and applied for a search warrant that was granted by the Honorable Kandis Westmore, U.S. Magistrate Judge for the Northern District of California, on July 9, 2025.  The affidavit in support of this warrant is attached hereto as Exhibit 3 and incorporated by reference as if fully stated herein.

18.      Upon executing this warrant, investigators found that the first package contained 206 grams of orange pills that field tested positive for methamphetamine; the second package contained 308 grams of suspected counterfeit Xanax; and the third package contained 428 grams of orange pills that field tested positive for MDMA.  The package with the suspected counterfeit Xanax is with the Santa Clara County Drug Laboratory for further testing.  The other packages have been sent to the USPIS Forensic Laboratory Services in Dulles, Virginia for further testing.

19.     According to United States Postal Service ("USPS") business records, these three packages had been mailed from a business called Senter Post located at 2358 Senter Road in San Jose, California.  Senter Post is a "Contract Postal Unit" that is privately owned, but provides USPS products and services at USPS prices.  Contract Postal Units are compensated based on performance.  Investigators spoke with the owners of Senter Post who provided surveillance video of an unknown Asian male dropping off parcels consistent with the three packages.  The owners of Senter Post told investigators that this unknown Asian male dropped packages at their establishment on multiple occasions and that he would typically come in the morning.

20.     On July 14, 2025, investigators conducted surveillance at Senter Post and saw an individual that appeared to be the unknown Asian male seen in the surveillance video provided by the owners of Senter Post.  This person entered a white Audi bearing California registration 9SWC855 ("PHAM'S VEHICLE").  California Department of Motor Vehicles ("DMV") records show that this vehicle was registered to PHAM.  Investigators reviewed PHAM's driver's license photograph on file with the California DMV and concluded that PHAM appeared to be the unknown Asian male that dropped off the packages both on July 14, 2025 and in the surveillance video provided by the owners of Senter Post.

21.     Investigators then spoke with the owners of Senter Post who reported that PHAM dropped off two packages for delivery.  Investigators intercepted these packages before they were delivered and applied for and received a search warrant for the packages from Magistrate Judge Westmore on July 21, 2025.  The affidavit in support of this search warrant is attached hereto as Exhibit 4 and is incorporated by reference as if fully stated herein.  The packages contained 413 grams and 823 grams, respectively, of orange pills that field tested positive for methamphetamine.

6

These packages have been sent to the United States Postal Inspection Service ("USPIS") Forensic Laboratory Services in Dulles, Virginia for further testing.

**C.**     **Surveillance of PHAM and Identification of the STASH HOUSE**

22.     On July 23, 2025, Judge Javier Alcala of the Superior Court for the County of Santa Clara issued a search warrant permitting the installation of a GPS tracker device on PHAM'S VEHICLE.  The affidavit in support of this search warrant is attached hereto as Exhibit 5 and incorporated by reference as if fully stated herein.

23.     On July 24, 2025, the GPS tracker showed that PHAM'S VEHICLE traveled to a residence at 1254 Pecan Court, San Jose, California for two minutes at 6:52 a.m.  Based on training and experience and subsequent observations in this investigation of multiple people going to this residence for brief periods of time, getting garbage bags full of packages out of the garage, shipping those packages, and investigators' interception of numerous packages containing drugs, investigators believe that the residence at 1254 Pecan Court in San Jose, California (the "STASH HOUSE") is being used to stash drugs for distribution.

24.     PHAM'S VEHICLE then went to 1908 Senter Road in San Jose, California.  This is the address (specifically, unit 454) listed as PHAM's residence on his California driver's license and during the course of this investigation, investigators have seen PHAM park his car there overnight on a regular basis.  After stopping at PHAM's residence, PHAM'S VEHICLE went to Senter Post.  United States Postal business records reflect at least 60 packages sent that day consistent with the shipment of narcotics by this drug trafficking organization ("DTO").  Specifically, the packages were Priority Mail parcels that listed the purported senders as hobby shops or trading card companies in the San Jose area.  Based on PHAM's travel between his residence, the STASH HOUSE, and Senter Post, and the subsequent mailing of suspicious

packages believed to contain narcotics from Senter Post, investigators believe PHAM transported narcotics for distribution through the mail.

25.     On July 25, 2025, the GPS tracker showed that PHAM'S VEHICLE traveled to the STASH HOUSE for a few minutes at around 7:33 a.m.  PHAM'S VEHICLE then went to PHAM's residence before going to Senter Post.  Senter Post confirmed that PHAM dropped off multiple packages to be delivered that day.  Investigators intercepted one of the packages that listed the sender as South Bay Sports Cards and contacted the listed recipient.  The recipient told investigators that he ordered 500 Adderall pills and 50 MDMA pills from the dark web.  Investigators opened the package and based on their training and experience, the contents appeared to be illegal drugs, in the form of orange counterfeit pills containing methamphetamine and MDMA, similar to the pills seized from packages mailed by this DTO.  This package has been sent to the USPIS Forensic Laboratory Services in Dulles, Virginia for further testing.  Based on PHAM's travel between his residence, the STASH HOUSE, and Senter Post, and the subsequent mailing of a package containing suspected narcotics from Senter Post, investigators believe PHAM transported narcotics for distribution through the mail.

26.     On July 31, 2025, investigators set up surveillance at the STASH HOUSE. Investigators saw, consistent with GPS tracker data, PHAM'S VEHICLE park by the closed garage door at the STASH HOUSE around 7:36 a.m.  At approximately 7:45 a.m., the garage door opened, and PHAM exited PHAM'S VEHICLE.  Based on training and experience, and observations of this interaction, it appears that PHAM communicated with someone inside the STASH HOUSE to request that the garage door be opened to access the suspected narcotics stored therein.  PHAM walked into the garage and then exited carrying a large black garbage bag that appeared to contain a number of packages.  PHAM placed this bag into PHAM'S VEHICLE, returned to the garage at

the STASH HOUSE, and then exited again carrying a second large black garbage bag that appeared to contain a number of packages. PHAM returned to the garage at the STASH HOUSE a third time and exited with a white plastic garbage bag that contained unknown objects. PHAM placed the white bag in the passenger area of PHAM'S VEHICLE and then drove away from the area.

27. Investigators continued surveillance on PHAM and saw PHAM appear to place a parcel in a USPS collection box near 21701 Stevens Creek Road in Cupertino, California. Investigators opened the collection box and retrieved a package that was consistent with the profile of other packages identified above, including purporting to be sent from a card shop business in the San Jose area. Investigators later applied for and received a search warrant for this package from U.S. Magistrate Judge Nathanael Cousins on August 19, 2025. The affidavit in support of that warrant is attached hereto as Exhibit 6 and incorporated by reference as if fully stated herein. The package contained 166 grams of orange pills that field tested positive for methamphetamine. This package has been sent to the USPIS Forensic Laboratory Services in Dulles, Virginia for further testing. Based on experience and training, investigators believe that PHAM retrieved the suspected methamphetamine from the STASH HOUSE and transported the methamphetamine to a mailbox to distribute the narcotics through the U.S. mail.

28. On August 11, 2025, the GPS tracker showed that PHAM'S VEHICLE left PHAM's residence at 9:52 a.m. and traveled to the STASH HOUSE, arriving around 10:24 a.m. PHAM'S VEHICLE left the STASH HOUSE about four minutes later. PHAM'S VEHICLE then drove to the USPS Processing and Distribution Center located at 1750 Lundy Avenue in San Jose, California (the "P&DC"). PHAM'S VEHICLE then returned to PHAM's residence. United States Postal business records show multiple parcels matching the profile of packages shipped by the

DTO, that is packages listing hobby shops and trading card companies in the San Jose area as the purported senders, were dropped off at the P&DC that day.

29.    On August 12, 2025, investigators set up surveillance at the STASH HOUSE. Investigators saw PHAM'S VEHICLE arrive around 9:48 a.m.  With the use of a drone, investigators saw PHAM'S VEHICLE park next to the garage door at the STASH HOUSE.  An unknown female then exited the back door of the STASH HOUSE, entered the garage area through a door and then shortly thereafter the large garage door opened.  PHAM entered the garage and exited with two large black garbage bags that appeared to contain packages.  PHAM placed both bags in the trunk of PHAM'S VEHICLE.  PHAM then entered PHAM'S VEHICLE and drove away.  The GPS tracker showed that PHAM'S VEHICLE went to the P&DC.  Investigators contacted an employee at the P&DC who was able to identify the bags PHAM dropped off for delivery.  The packages listed sender addresses from card shops, consistent with the pattern of the DTO.  Based on training and experience, and the observation of an unknown individual opening the garage, I believe that PHAM communicated with someone in the STASH HOUSE to coordinate opening the garage to access the suspected narcotics therein and then PHAM distributed the packages through the U.S. mail.

30.    On August 13, 2025, the GPS tracker showed that PHAM'S VEHICLE arrived at the STASH HOUSE around 10:43 a.m.  PHAM'S VEHICLE then traveled to the P&DC, arriving around 10:50 a.m.  Investigators confirmed that multiple packages with sender addresses of card shops were dropped for delivery that day, consistent with other packages sent by this DTO that were found to contain narcotics.

31.    On August 14, 2025, the GPS tracker showed that PHAM'S VEHICLE traveled to the STASH HOUSE around 10:03 a.m.  PHAM'S VEHICLE then traveled to the P&DC around

10:09 a.m.  Investigators confirmed a number of packages listing trading card companies as the sender, consistent with the pattern of the DTO, were dropped for delivery that day.   Based on my training and experience, the volume of packages, and the daily routine of sending shipments, I believe PHAM went to the STASH HOUSE to pick up narcotics packages for distribution through the U.S. mail.

32.     On August 18, 2025, the GPS tracker showed that PHAM'S VEHICLE drove to the STASH HOUSE around 10:02 a.m.  PHAM'S VEHICLE then went to the P&DC, arriving around 10:12 a.m.   Investigators went to the P&DC and saw PHAM'S VEHICLE there. Investigators watched PHAM retrieve bags from the trunk of PHAM'S VEHICLE, walk up the ramp to a series of wire hampers where he dropped off parcels from the bags.  A Postal Inspector saw PHAM dropping off both Priority and Express packages.  PHAM then approached the Postal Inspector and asked a question about the appointment system for the USPS Business Mail Entry Unit ("BMEU").[1]  PHAM stated he had an appointment at 10:00 a.m., but the BMEU did not open until 11:00 a.m.  The Postal Inspector told PHAM to return at 11:00 a.m. or make an appointment for later in the day.  PHAM then removed two Express mail packages from the wire hamper and stated that he only meant to drop off the Priority packages, as he motioned towards the wire hamper investigators saw him drop the packages into earlier.  PHAM stated that he would drop the Express packages at collection boxes later.  PHAM then emptied his black garbage bag, which contained additional Priority mail envelopes and packages.  PHAM returned to PHAM'S VEHICLE and left the facility.

---

[1] The BMEU is an area at postal facilities designated for commercial entities that send a large volume of packages or large-sized packages which cannot be easily or reliably handled by a postal carrier.  It is designed to permit commercial entities a reliable way to mail their business-related packages.  The BMEU at the P&DC is by appointment only.

33.     Investigators intercepted one of the packages PHAM dropped into the wire hamper at the BMEU.  The package listed the sender as South Bay Sports Cards.  South Bay Sports Cards is owned by an entity named Stevens Creek Sports Cards.  A representative of Stevens Creek Sports Cards spoke to investigators and stated that the company did not send the package investigators had intercepted.  This representative also explained that the company did not use Priority mail flat rate boxes like the one used for the intercepted package and that South Bay Sports Cards was a sister store that generally did not ship any items.

34.     Investigators later applied for and received a search warrant for this package from U.S. Magistrate Judge Nathanael Cousins on August 20, 2025.  *See* 25-mj-71011-NC (N.D. Cal.) The affidavit in support of this warrant is attached hereto as Exhibit 7 and incorporated by reference as if fully stated herein.  Investigators executed this warrant on August 21, 2025, and found 137 grams of a white powder substance that field tested positive for ketamine.  This package has been sent to the USPIS Forensic Laboratory Services in Dulles, Virginia for further testing.

35.     On August 20, 2025, the GPS tracker showed that PHAM'S VEHICLE drove to the STASH HOUSE around 12:08 p.m.  Investigators installed a pole camera outside the STASH HOUSE a few days before.  The pole camera footage showed that PHAM'S VEHICLE parked next to the closed garage door at the STASH HOUSE.  PHAM then exited PHAM'S VEHICLE and opened the trunk.  PHAM appeared to be moving items around in the trunk.  Around 12:12 p.m., the garage door at the STASH HOUSE opened and PHAM walked into the garage.  PHAM exited the garage with a large black garbage bag that appeared to be full.  PHAM removed what looked like USPS envelopes.  PHAM then removed a yellow bag with the word "Lego" on it and appeared to put the envelopes in the yellow "Lego" bag.  PHAM placed all of the items in his trunk and then shut it and drove away from the STASH HOUSE around 12:15 p.m.  The GPS tracker

showed that PHAM'S VEHICLE drove to the P&DC, arriving around 12:24 p.m. Based on training and experience and the footage of this interaction, I believe that PHAM communicated with someone in the STASH HOUSE to gain access to the garage, pick up packages containing narcotics, and then distributed those packages through the U.S. mail.

36.     On August 21, 2025, the GPS tracker showed that PHAM'S VEHICLE drove to the STASH HOUSE around 9:24 a.m. The pole camera showed PHAM'S VEHICLE drive past the STASH HOUSE, conduct a U-turn, and then drive up to the STASH HOUSE just as the garage door was opening. PHAM exited PHAM'S VEHICLE and walked into the garage. PHAM exited the garage carrying a large black garbage bag that appeared to contain items consistent with packages. PHAM placed the items in the trunk of PHAM'S VEHICLE and then entered PHAM'S VEHICLE and drove away. The GPS tracker showed that PHAM'S VEHICLE drove to the P&DC, arriving around 9:32 a.m.

37.     On August 22, 2025, the GPS tracker showed that PHAM'S VEHICLE drove to the STASH HOUSE around 9:41 a.m. The pole camera showed PHAM'S VEHICLE drive past the STASH HOUSE, conduct a U-turn, and then drive up to the STASH HOUSE while the garage door was opening. PHAM exited PHAM'S VEHICLE and walked into the garage. PHAM exited the garage carrying a large black garbage bag that appeared to contain items consistent with packages. PHAM placed the items in the trunk of PHAM'S VEHICLE and then entered his vehicle and drove away. The GPS tracker showed that PHAM'S VEHICLE drove to the P&DC. Based on training and experience and the footage of this interaction, I believe that PHAM communicated with someone in the STASH HOUSE to gain access to the garage, pick up packages containing narcotics, and then distributed those packages through the U.S. mail.

38.    On August 26, 2025, the GPS tracker showed that PHAM'S VEHICLE drove to the STASH HOUSE around 9:38 a.m.  PHAM'S VEHICLE left shortly thereafter and went to the P&DC.  At this time, the pole camera had run out of batteries and was not operating.

39.    On August 28, 2025, the GPS tracker showed that PHAM'S VEHICLE drove to the STASH HOUSE around 10:00 a.m.  PHAM'S VEHICLE left about 10 minutes later and went to the P&DC.

40.    Based on my training and experience, the travel with PHAM'S VEHICLE to and from the STASH HOUSE, then to and from the P&DC, and the multiple packages seized found to contain narcotics, I believe PHAM used the STASH HOUSE and PHAM'S VEHICLE to store and transport narcotics for distribution through the U.S. mail.

### D.    Identification of NGUYEN and Surveillance of NGUYEN and PHAM

41.    On September 5, 2025, investigators received notice of an appointment at the San Jose BMEU for South Bay Sports Cards that was booked online.  As noted above, a representative of Stevens Creek Sports Cards explained that it did not generally ship any items from its sister store, South Bay Sports Cards.  Investigators reviewed surveillance of this BMEU appointment. An Asian male arrived for this appointment in a black Honda Civic bearing California registration 9RIH211 ("NGUYEN'S VEHICLE").  California DMV records show that this car is registered to NGUYEN.  Investigators then reviewed the driver's license photograph on file for NGUYEN and concluded that it appeared to be the person on surveillance that showed up for the BMEU appointment purportedly on behalf of South Bay Sports Cards.  The surveillance video showed NGUYEN interacted with postal employees and then left around 10:11 a.m.  During this interaction, NGUYEN presented his cellular telephone to a USPS employee to show the confirmation number for the BMEU appointment purportedly on behalf of South Bay Sports

14

Cards.  Investigators intercepted a package that was dropped off at the BMEU during the time NGUYEN was present that listed a sender of South Bay Sports Cards.

42.    Investigators applied for and received a search warrant for this package on September 15, 2025.  The affidavit in support of this warrant is attached hereto as Exhibit 8 and incorporated by reference as if fully stated herein.  Investigators executed this search warrant on September 16, 2025, and found approximately 450 grams of pills that field tested positive for MDMA.  This package been sent to the USPIS Forensic Laboratory Services in Dulles, Virginia for further testing.

43.    On September 8, 2025, the GPS tracker showed that PHAM'S VEHICLE drove to the STASH HOUSE around 10:18 a.m.  PHAM'S VEHICLE left shortly thereafter and went to the P&DC.  Investigators conducted surveillance at the BMEU at the P&DC.  At approximately 10:15 a.m., investigators saw PHAM pull up in PHAM'S VEHICLE and checked in for an appointment he had scheduled for 10:00 a.m.  PHAM returned to PHAM'S VEHICLE and retrieved three large, black garbage bags.  PHAM placed the bags at the service desk, signed his paperwork and left.  United States Postal business records show that PHAM left five packages for delivery that listed "Card Shops Santa Clara" as the sender.  Investigators in Indiana intercepted these packages and got a warrant to access the contents.  The contents field tested positive for methamphetamine.

44.    On September 10 and 11, 2025, investigators reviewed surveillance video at the P&DC.  The surveillance video showed an unknown adult male with dyed blonde hair arrive for appointments scheduled on behalf of "South Bay Sports" that investigators believe were booked online by PHAM.  Investigators believe PHAM booked these appointments, because South Bay Sports Cards spoke with investigators and told them they did not ship products in this manner, the

online account was created by someone listing the name "Quoc Pham" (which is PHAM's middle name and how PHAM signed multiple documents when dropping off packages at the BMEU), listed an email of Phambob67@gmail.com, and the phone number listed for this account is the same phone number used for the "Cardsart" account, which is another one of the hobby shops/trading card companies for which PHAM and NGUYEN have shown up for appointments and dropped off packages suspected to contain narcotics. This unknown adult male dropped off multiple packages to be delivered. Some of these packages listed "South Bay Sports Cards" as the sender and others listed and paid postal rates for 50 pounds when they weighed much less and were paid for with cryptocurrency, consistent with prior packages found to contain narcotics shipped by this DTO.

45. On September 12, 15, and 16 2025, surveillance video at the P&DC showed NGUYEN arrive for appointments made on behalf of "South Bay Sports" to drop off multiple packages to be delivered. These packages listed hobby shops and trading card stores as the sender, consistent with prior packages found to contain narcotics shipped by this DTO.

46. On September 17, 2025, investigators conducted surveillance at the STASH HOUSE. At approximately 9:40 a.m., investigators saw NGUYEN enter the front door of the STASH HOUSE and leave with a white plastic bag. BMEU surveillance video shows that at approximately 9:49 a.m., NGUYEN arrived at the BMEU. United States Postal business records show that NGUYEN showed up for an appointment for another trading card company, "Cardsart." As noted above, based on the similar phone numbers for the accounts, it appears the appointment was made by PHAM. NGUYEN retrieved a white plastic bag, similar to what was taken from the STASH HOUSE, and emptied the contents of the bag into a hamper at the BMEU. NGUYEN signed the paperwork at the BMEU and then left around 9:55 a.m. Based on my training and

experience, the frequency and number of packages dropped off by NGUYEN, and the packages listing a trading card company in the San Jose area as the purported sender, I believe NGUYEN distributed narcotics through the U.S. mail.

47.     On September 18, 2025, investigators reviewed surveillance video at the P&DC. The surveillance video showed an unknown adult male with dyed blonde hair arrive for appointments scheduled online on behalf of "Cardsart."  This unknown adult male dropped off multiple packages to be delivered.

48.     On September 19, 2025, investigators set up surveillance at the STASH HOUSE. At approximately 9:30 a.m., investigators saw NGUYEN arrive in NGUYEN'S VEHICLE, exit NGUYEN'S VEHICLE, enter the garage, and then exit the garage carrying bags.  NGUYEN placed the bags in NGUYEN'S VEHICLE and then drove away from the area.  Investigators reviewed surveillance video of the P&DC on this day, and it showed NGUYEN drop off multiple parcels during an appointment that was scheduled online for "Cardsart."  Based on training and experience and the observations of investigators, I believe that NGUYEN communicated with someone in the STASH HOUSE to coordinate opening the garage door to access bags full of packages suspected to contain narcotics and then NGUYEN distributed those packages through the U.S. mail.

49.     On September 22, 2025, investigators conducted surveillance at the BMEU.  At approximately 9:35 a.m., NGUYEN arrived in NGUYEN'S VEHICLE.  NGUYEN checked in for an appointment purportedly on behalf of a company called "Cardsart."  NGUYEN then pushed an orange USPS hamper to NGUYEN'S VEHICLE, retrieved a bag from his car, and then emptied the contents of the bag into the hamper.  NGUYEN then walked while pushing the hamper back to the service desk.  NGUYEN approached a Postal Inspector and stated he was not sure if he filled

out all the forms yet. NGUYEN stated he booked this appointment. The Postal Inspector asked what NGUYEN was shipping and NGUYEN said he started a business with friends that ships Pokemon cards, baseball cards, and that they even made custom cards. NGUYEN said it was lucrative. Another postal employee returned with a form for NGUYEN to fill out and sign. NGUYEN signed the form and then returned to NGUYEN'S VEHICLE and left the area. Investigators were unable to intercept this package before it was delivered.

50. On September 23, 2025, investigators set up surveillance at the STASH HOUSE. At approximately 9:45 a.m., investigators saw PHAM arrive in PHAM'S VEHICLE, exit PHAM'S VEHICLE, enter the garage, and then exit the garage carrying bags. PHAM placed the bags in PHAM'S VEHICLE and then drove away from the area. PHAM checked in for an appointment purportedly on behalf of a company called "Cardsart." PHAM signed the appointment log using the name "Quoc," which is his middle name listed on his California driver's license. PHAM then pushed an orange USPS hamper to his car, retrieved a bag from his car, and then emptied the contents of the bag into the hamper. Investigators reviewed surveillance video of the P&DC on this day, and it showed PHAM arrived around 9:54 a.m.

51. On September 24, 2025, investigators conducted surveillance at the BMEU at the P&DC. At around 9:45 a.m., investigators saw PHAM enter the BMEU and approach a USPS employee. PHAM showed the employee his phone to display his appointment confirmation. PHAM then emptied the packages from the bag he brought in with him into a USPS orange hamper. PHAM then signed a document for the appointment and left.

52. On October 2, 2025, investigators again conducted surveillance at the BMEU at the P&DC. At around 10:06 a.m., investigators saw PHAM arrive and approach a USPS employee. PHAM showed the USPS employee a printout of his appointment confirmation and then dropped

18

off several packages for delivery.  These packages listed hobby shops and trading card stores as the sender, consistent with prior packages found to contain narcotics shipped by this DTO.

53.     Also on October 2, 2025, investigators working in an undercover capacity ordered several hundred counterfeit Adderall pills through a dark web vendor suspected to be involved with this DTO and requested it be delivered to an address in Massachusetts.

54.     On October 6, 2025, investigators conducted surveillance at the BMEU at the P&DC.  Investigators saw NGUYEN arrive at the BMEU where he retrieved several bags from the trunk of NGUYEN'S VEHICLE which he then emptied into an orange hamper.  Investigators approached NGUYEN and asked if the parcels inside of the orange hamper were his.  NGUYEN nodded his head and said "yeah."  NGUYEN left the BMEU in NGUYEN'S VEHICLE.

55.     Investigators processed nine parcels dropped off by NGUYEN and found that two of the packages listed the recipient address used by investigators for the aforementioned undercover purchase of counterfeit Adderall pills through the dark web.  Investigators opened these packages and found that they contained orange pills that field tested positive for methamphetamine.  These pills will be sent to a drug laboratory for further testing.

56.     The remaining seven parcels were forwarded to investigators in Boston, for further investigation.  On October 23, 2025, investigators obtained search warrants for these packages.  *See* 25-mj-3256-JDH, 25-mj-3257-JDH, 25-mj-3258-JDH, 25-mj-3259-JDH, 25-mj-3260-JDH, 25-mj-3261-JDH, and 25-mj-3262-JDH.  One package contained orange pills and bars, one package contained just bars, and the remaining five packages contained orange pills.  Based on training and experience, investigators believe that the orange pills are counterfeit Adderall pills containing methamphetamine.  Consistent with that belief, four of the six packages containing orange pills field tested positive for methamphetamine.  Based on training and experience,

investigators believe that the other bars in the packages are counterfeit Xanax bars, which often contain narcotics which do not register in a field test. Consistent with that belief, the bars were field tested, and the results were inconclusive.

57. As will be discussed in more detail below, the package containing both the orange pills and bars was Priority Mail parcel 9405 5362 0624 9309 7526 72 which had a listed sender of "MOJOBREAK SPORTS CARDS, 2060 DUANE AVE, SANTA CLARA 95054" and a listed recipient of "AUTUMN HARRIS, 950 BROADWAY APT 5, CHELSEA MA 02150-2283."

58. On October 9, 2025, investigators conducted surveillance at the STASH HOUSE. Investigators saw NGUYEN and PHAM arrive at the STASH HOUSE together in NGUYEN'S VEHICLE. Through the use of a drone, investigators saw NGUYEN and PHAM exit NGUYEN'S VEHICLE, walk into the garage of the STASH HOUSE, and exit carrying garbage bags. PHAM and NGUYEN then placed those garbage bags in NGUYEN'S VEHICLE. NGUYEN'S VEHICLE then drove away from the STASH HOUSE in the direction of Capitol Expressway and Berryessa Road. There is a USPS Collection Box at this intersection, in front of a Safeway grocery store located at 2558 Berryessa Road, San Jose, California. Investigators had seen PHAM and NGUYEN drop off packages at this USPS Collection Box in the past, but investigators did not see NGUYEN'S VEHICLE at this intersection, nor did they see PHAM or NGUYEN deposit any boxes into this USPS Collection Box on this date. Investigators examined this USPS Collection Box and saw that it was full of packages. Investigators maintained surveillance on the USPS Collection Box while retrieving a key to access it and did not see anyone use it. Investigators opened the USPS Collection Box and found approximately 10 parcels inside of it, all of which contained the listed sender of "DEGEN COLLECTIBLES, 2266 SENTER RD, STE 142, SAN

JOSE CA 95112." This is another trading card/hobby company in the San Jose area. One of the packages was addressed to "P DIAZ, 25262 COUNTRY ROAD 26, ELKHART IN 46517-9459."

59.     On October 14, 2025, investigators in Gary, Indiana executed a federal search warrant on Priority Mail parcel 9405 5362 0624 9309 9862 82, which listed the sender as "DEGEN COLLECTIBLES, 2266 SENTER RD, STE 142, SAN JOSE CA 95112" and a listed recipient of "P DIAZ, 25262 COUNTRY ROAD 26, ELKHART IN 46517-9459." While investigators did not record the parcel numbers of the packages found in the USPS Collection Box at the intersection of Capitol Expressway and Berryessa Road on October 9, 2025, USPS business records show Priority Mail parcel 9405 5362 0624 9309 9862 82 was mailed on October 9, 2025. Based on the mailing date, the sender, and the recipient, I believe Priority Mail parcel 9405 5362 0624 9309 9862 82 was one of the packages investigators found in the USPS Collection Box at the intersection of Capitol Expressway and Berryessa Road on October 9, 2025. And based on the observation of PHAM and NGUYEN at the STASH HOUSE and NGUYEN'S VEHICLE traveling in the direction of this intersection, I believe PHAM and/or NGUYEN placed this parcel in the USPS Collection Box for delivery. This parcel contained approximately 30 grams of pressed orange pills that field tested positive for methamphetamines. Investigators interviewed the recipient of this package. That person told investigators that she purchased Adderall through a clearnet forum[2] and paid for the narcotics using a combination of Cash App and cryptocurrency.

60.     On October 15, 2025, investigators applied for a warrant authorizing the usage of a GPS tracker on NGUYEN'S VEHICLE and it was granted by the Honorable Judge Nathaniel

---

[2] A clearnet forum is a publicly accessible internet site that does not require special software to access like the dark web.

Cousins.  *See* Docket No. Cr 25-71219-NC.  The affidavit in support of this warrant is attached hereto as Exhibit 9 and incorporated by reference as if fully stated herein.

61.  On October 17, 2025, the GPS tracker showed NGUYEN'S VEHICLE parked in the driveway of NGUYEN's residence around 8:00 a.m.  At approximately 9:10 a.m., investigators saw NGUYEN leave from the front door of his residence and enter NGUYEN'S VEHICLE.  GPS tracker data showed NGUYEN'S VEHICLE went to the STASH HOUSE at approximately 9:30 a.m.  Through the use of a drone, investigators saw NGUYEN arrive at the STASH HOUSE, retrieve several bags from the garage, and then place those bags inside of NGUYEN'S VEHICLE.  GPS Tracker data indicated NGUYEN'S VEHICLE then went to the corner of Capitol Expressway and Berryessa Road.  As noted above, there is a USPS Collection Box at this corner.  NGUYEN'S VEHICLE then returned to the NGUYEN's residence.

62.  At approximately 10:20 a.m., investigators opened the USPS Collection Box at the corner of Capitol Expressway and Berryessa Road.  Investigators saw 12 parcels inside the USPS Collection Box that matched the profile of other narcotics parcels in this case.  All of these parcels listed "CLASSIC LOOT, 570 N 6TH STREET, SAN JOSE CA 95112" as the sender.  One of the packages, Priority Mail parcel 9405 5362 0624 9310 3956 60, listed "AUTUMN HARRIS, 950 BROADWAY APT 5, CHELSEA MA 02150-2283" as the recipient.  The recipient information is identical to one of the parcels intercepted and sent to investigators in Boston, Massachusetts for further investigation on October 6, 2025 (*see* ¶ 57 *supra*).  Based on my training and experience, dark web vendors often have a policy of returning funds for orders intercepted by law enforcement or attempting to resend a shipment for drugs when the first attempted shipment was intercepted by law enforcement.  Here, it appears that this package addressed to Autumn Harris may be an attempted reshipment of the parcel intercepted on October 6, 2025.

63.     On October 21, 2025, investigators conducted surveillance of the STASH HOUSE via a drone.  On the drone footage, investigators saw PHAM'S VEHICLE arrive at the STASH HOUSE.  PHAM then exited PHAM'S VEHICLE, went into the garage of the STASH HOUSE, exited carrying bags, placed the bags in PHAM'S VEHICLE, and then drove away from the area

64.     Based on the activities observed when PHAM and NGUYEN have gone to the STASH HOUSE, it appears that PHAM and NGUYEN are communicating with someone at the STASH HOUSE to coordinate having the garage open upon their arrival.  Based on my training and experience, these communications are likely happening through the use of cellular telephones.

**E.    Execution of Search Warrants on October 27, 2025 and Identification of ABIDOG**

65.     On October 24, 2025, U.S. Magistrate Judge Nathanael Cousins issued warrants authorizing the search of the STASH HOUSE, PHAM's residence, NGUYEN's residence, PHAM's person, NGUYEN's person, PHAM'S VEHICLE, and NGUYEN'S VEHICLE.  The affidavit in support of those warrants is attached hereto as Exhibit 10 and incorporated by reference as if fully stated herein.

66.     Investigators executed these warrants on October 27, 2025.

67.     At NGUYEN's residence, investigators found three firearms, one of which had an obliterated serial number.  These firearms were found in a safe that was inside a closet.  The door to that closet was in a common hallway, but was the door right next to what investigators believe to be NGUYEN's bedroom.  Investigators believe this was NGUYEN's bedroom because other occupants of the property stated it was NGUYEN's bedroom and investigators found identification cards for NGUYEN, including a California state identification and a work identification, in that room.

68.    While executing the search warrant at the STASH HOUSE, investigators found tens of thousands of pills that based on training and experience appear to be narcotics, including a brick of cocaine that appears to weigh over one kilogram and MDMA pills.  In addition, investigators found many orange pills that appear to be consistent with what this DTO has distributed in other packages and, based on training and experience, appears to be counterfeit Adderall pills containing methamphetamine.

69.    Many of the pills were found in the garage.  The pictures below show some of the drugs found in the garage:



70.    In addition, investigators located over 50 Priority Mail packages in the garage at the STASH HOUSE that listed "Cardart" at 781 E El Camino Real, Sunnyvale, California 94087 as the purported sender of the package.  This is consistent with this DTO's practice of using hobby shop and trading card companies in the San Jose area as the purported sender of packages containing narcotics.

71.    Among these packages, was one addressed to a property in Massachusetts that investigators use for undercover purchases.  Investigators believe this package was meant to fulfill

an order for 500 pills of Adderall ordered in an undercover capacity through a dark web vendor this past weekend.

72.     Many of the pills were also found in a room investigators believe to be ABIDOG's bedroom.  Other occupants of the house told investigators the room was ABIDOG's bedroom, there was mail in the room addressed to ABIDOG, and ABIDOG himself told investigators that it was his bedroom.  The pictures below show some of the suspected drugs found in ABIDOG's bedroom, including suspected counterfeit Adderall pills containing methamphetamine matching the pills found in the garage:





73.     In ABIDOG's bedroom, investigators also found a printer, Priority Mail boxes for packaging, and packaging labels.  One of the packaging labels in ABIDOG's bedroom listed a purported sender of "Cardart" at 781 E El Camino Real, Sunnyvale, California 94087.  As discussed above, this purported sender is consistent with this DTO's practice of using hobby shop and trading card companies in the San Jose area (and this sender, in particular) as the purported sender of packages containing narcotics.  Based on the fact that this package was found in ABIDOG's bedroom along with suspected narcotics, a printer, mailing boxes, and packaging labels, I believe ABIDOG was involved in the packaging and shipment of narcotics as part of the DTO.

74.     USPS business records show that ABIDOG is a regular recipient of mail at the STASH HOUSE.  Investigators have seen ABIDOG at the STASH HOUSE during prior surveillance on multiple occasions.  Investigators, through the use of drone footage, have also seen ABIDOG walking through the backyard area of the STASH HOUSE carrying garbage bags that appear to contain packages into the garage—a practice which is also consistent with the DTO's behavior as described above.

75.     Investigators spoke with one of the occupants of the STASH HOUSE, who identified herself as ABIDOG's sister.  This discussion was recorded on body camera.  ABIDOG's sister told investigators that ABIDOG never directly stated that he distributed drugs, but she saw orange and green pills in ABIDOG's bedroom and assumed that was what he was doing.  ABIDOG's sister also told investigators that ABIDOG would ask her to open the garage two to three times per week for random people and that those people would take garbage bags out of the garage that had been loaded by ABIDOG.  Based on the DTO's usual routine of having PHAM and NGUYEN arrive at the STASH HOUSE, having the garage door open, and then PHAM and NGUYEN getting garbage bags containing packages of narcotics to be distributed through the U.S. mail, investigators believe that ABIDOG was preparing the packages and leaving the bags with the packages in the garage at the STASH HOUSE for PHAM and NGUYEN to pick up and then distribute through the U.S. mail.

76.     Based on the foregoing, including the multiple trips by PHAM and NGUYEN to the STASH HOUSE, the pattern of picking up garbage bags filled with packages from the garage of the STASH HOUSE, the coordinated activity of the garage at the STASH HOUSE opening when PHAM and NGUYEN have arrived to pick up the garbage bags filled with packages, PHAM and NGUYEN taking those already prepared packages to be sent in the U.S. mail, how those packages listed the purported senders as hobby shop or trading card companies in the San Jose area, that many of the packages have been intercepted and found to contain suspected narcotics, the coordinated pickup and delivery of packages by PHAM and NGUYEN together, that two of the packages delivered by NGUYEN from the STASH HOUSE to be mailed were packages purchased by investigators in an undercover capacity, the large amount of drugs found in ABIDOG's bedroom and the garage at the STASH HOUSE, the Priority Mail packaging materials

in ABIDOG's bedroom, including a label listing "Cardart" as the purported sender, and finding over 50 Priority Mail packages in the garage of the STASH HOUSE, including one consistent with an undercover purchase made by investigators, investigators believe there is probable cause that the Target Subjects, ABIDOG, PHAM and NGUYEN, have committed the Charged Offense.

## **CONCLUSION**

77.    Based on the foregoing, there is probable cause to believe that the Target Subjects committed the Charged Offense.

I declare that the foregoing is true and correct.

*Leroy Versoza / by JDH*
_____
Leroy Versoza
Postal Inspector, USPIS

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____
HON. JESSICA D. HEDGES
UNITED STATES MAGISTRATE JUDGE

on this ___27___ day of October of 2025.

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | |
|---|---|
| United States of America<br>v.<br>John Abidog | ) ) ) ) ) ) |
| _Defendant_ | |

Case No.  25-mj-3264-JDH

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_    John Abidog                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment          ❑ Superseding Indictment          ❑ Information          ❑ Superseding Information          ☑ Complaint
❑ Probation Violation Petition          ❑ Supervised Release Violation Petition          ❑ Violation Notice          ❑ Order of the Court

This offense is briefly described as follows:

21 U.S.C. § 846 - Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances

Date:      10/27/2025

_Issuing officer's signature_

City and state:      Boston, MA

Hon. Jessica D. Hedges, U.S. Magistrate Judge
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____<br>at _(city and state)_ _____ . |
| Date: _____ |
| _Arresting officer's signature_ |
| _Printed name and title_ |

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 25-mj-3264-JDH |
| Viet Pham | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant_ | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_   Viet Pham                                                ,
who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment     ❏ Superseding Indictment     ❏ Information     ❏ Superseding Information     ☑ Complaint
❏ Probation Violation Petition     ❏ Supervised Release Violation Petition     ❏ Violation Notice     ❏ Order of the Court

This offense is briefly described as follows:

21 U.S.C. § 846 - Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances

Date:     10/27/2025

_Issuing officer's signature_

City and state:     Boston, MA

Hon. Jessica D. Hedges, U.S. Magistrate Judge
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____ at _(city and state)_ _____ . |
| Date: _____ |
| _Arresting officer's signature_ |
| _Printed name and title_ |

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 25-mj-3264-JDH |
| John Nguyen | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     John Nguyen                                                                        ,

who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment     ❏ Superseding Indictment     ❏ Information     ❏ Superseding Information     ☑ Complaint
❏ Probation Violation Petition     ❏ Supervised Release Violation Petition     ❏ Violation Notice     ❏ Order of the Court

This offense is briefly described as follows:

21 U.S.C. § 846 - Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances

Date:     10/27/2025                                   *Issuing officer's signature*

City and state:     Boston, MA                        Hon. Jessica D. Hedges, U.S. Magistrate Judge
                                                                                 *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____                                      *Arresting officer's signature* |
| _____ *Printed name and title* |